UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SUNSTONE BEHAVIORAL HEALTH,
INC.,

        Plaintiff,

    v.

ALAMEDA COUNTY MEDICAL CENTER,

        Defendant.

_____/

NO. CIV. 06-2664 FCD DAD

MEMORANDUM AND ORDER RE:
MOTION FOR ATTORNEYS' FEES AND
EXPENSES, REQUEST TO RECOVER
COSTS

----oo0oo----

I.   Factual and Procedural Background

      Plaintiff Sunstone Behavioral Health Inc. ("Sunstone")
brought this action on November 22, 2006, against defendant
Alameda County Medical Center ("ACMC") alleging breach of
contract and breach of the implied covenant of good faith and
fair dealing with respect to an "Outpatient Psychiatric
Consulting Contract."  The matter came on regularly for trial
before the court, sitting without a jury, on June 16, 18, 19, and
23, 2009.  The court ruled in plaintiff's favor, awarding
$492,680.58 in damages, and judgment was entered accordingly.

      Plaintiff now moves for attorneys' fees and untaxed

1   costs pursuant to California Civil Code section 1717 in the

2   amounts of $328,970.65 and $15,922.46, respectively, and also

3   requests to recover taxable costs in the amount of $10,637.31

4   pursuant to Federal Rule of Civil Procedure 54(d)(1) and Eastern

5   District Local Rule 54-292.

6   II.  Discussion

7        A.   Motion for Attorneys' Fees and Untaxed Costs

8             "A federal court sitting in diversity applies the law

9   of the forum state regarding an award of attorneys' fees." Kona

10  Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir.

11  2000).  Because this case arises under diversity jurisdiction, 28

12  U.S.C. § 1332(a), the court must apply California law in deciding

13  plaintiff's motion for attorneys' fees and untaxed costs.

14            Although California law "ordinarily does not allow for

15  the recovery of attorneys' fees," California Civil Code section

16  1717 provides for an award of attorneys' fees where "the parties

17  contractually obligate themselves" to so compensate each other.

18  Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.,

19  250 F.3d 1234, 1237 (9th Cir. 2001) (citing Cal. Civ. Code 1717;

20  Trope v. Katz, 11 Cal. 4th 274, 279 (1995)).  Section 1717

21  specifically instructs:

22            In any action on a contract, where the contract
             specifically provides that attorney[s'] fees and costs,
23            which are incurred to enforce that contract, shall be
             awarded either to one of the parties or to the prevailing
24            party, then the party who is determined to be the party
             prevailing on the contract, whether he or she is the
25            party specified in the contract or not, shall be entitled
             to reasonable attorney[s'] fees in addition to other
26            costs.

27  Cal. Civ. Code 1717(a).

28            The contract upon which this action was brought

2

contained the following provision regarding attorneys' fees and

costs:

> Failure of [defendant] to pay any outstanding fees in full prior to termination of this Agreement, for any reason, shall subject [defendant] to specific damages in the amount of one thousand dollars ($1,000) per day until fees are paid in full, plus attorneys['] fees and expenses incurred in collecting outstanding fees and enforcing the terms of this provision.

(Ex. 1 § F.3, at 11.)

"California courts liberally construe 'on a contract' to extend to any action '[a]s long as an action "involves" a contract and one of the parties would be entitled to recover attorney[s'] fees under the contract if that party prevails in its lawsuit.'" In re Baroff, 105 F.3d 439, 442-43 (9th Cir. 1997) (quoting Milman v. Shukhat, 22 Cal. App. 4th 538, 545 (1994)) (alteration in original). This flexible standard is easily satisfied in the instant case, and defendant does not dispute that plaintiff's lawsuit was brought "on a contract." (See Opp'n Mot. Atty. Fees 1:24-26.)

Although the attorneys' fees provision of the contract in this case only refers to "attorneys['] fees and expenses incurred in collecting outstanding fees and enforcing the terms of this provision" (Ex. 1 § F.3, at 11 (emphasis added)), section 1717 instructs that "[w]here a contract provides for attorney[s'] fees, . . . that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." Cal. Civ. Code 1717(a). California courts have held that this provision requires, as a matter of law, that a contract which

3

1   provides for an award of attorney[s'] fees for enforcing
2   any part of a contract must be interpreted to provide for
    an award of attorney[s'] fees for enforcing any [other]
3   part of the contract, regardless of any limitation in the
    language of the fees clause.

4   <u>Pajaro Dunes Rental Agency, Inc. v. Pajaro Dunes Ass'n</u>, No. 97-

5   2516, 2002 WL 202412, at *2 (N.D. Cal. Feb. 5, 2002) (citing

6   <u>Myers Building Indus., Ltd. v. Interface Tech., Inc.</u>, 13 Cal.

7   App. 4th 949, 968 (1993)).

8          Here, the contract is silent as to whether the parties

9   were represented by counsel during its negotiation, and defendant

10  does not dispute that the attorneys' fees provision applies to

11  enforcing the entire contract and not merely the collection of

12  outstanding fees.  (<u>See</u> Opp'n Mot. Atty. Fees 1:24-26.)

13  Nonetheless, defendant contends that plaintiff was not a

14  "prevailing party" with respect to fees incurred between June 15,

15  2006, and October 4, 2006.  Defendant further argues that certain

16  fees and untaxed costs should be disallowed as unreasonable or

17  unnecessarily incurred.

18         1.   <u>Whether Plaintiff Was a "Prevailing Party" for</u>
                <u>Fees Incurred Between June 15, 2006 and October 4,</u>
19              <u>2006</u>

20         On October 4, 2006, plaintiff voluntarily dismissed a

21  prior action against defendant before subsequently re-filing the

22  complaint and initiating this case on November 22, 2006.  (<u>See</u>

23  Opp'n Mot. Atty. Fees 4:19-5:6; <u>see also</u> Complaint (Docket No.

24  2), <u>Sunstone Behavioral Health Inc. v. Alameda County Med. Ctr.</u>,

25  (No. 06-1643); Complaint (Docket No. 2), <u>Sunstone Behavioral</u>

26  <u>Health Inc. v. Alameda County Med. Ctr.</u>, (No. 06-2664).)  Relying

27  on Civil Code section 1717(b)(2), defendant contends that

28  plaintiff is precluded from obtaining attorneys' fees incurred

4

before October 4, 2006.  Section 1717(b)(2) instructs, "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

Although neither party can claim to have "prevailed" in the prior action that was subject to voluntary dismissal, defendant does not dispute that plaintiff is the prevailing party in the instant action.  Furthermore, while a court "may not award fees for legal work that is unrelated to a cause of action for which fees are authorized," Thompson Pac. Constr., Inc. v. City of Sunnyvale, 155 Cal. App. 4th 525, 555-56 (2007), the fees incurred between June 15, 2006, and October 4, 2006, plainly relate to the instant lawsuit, as the two complaints allege identical causes of action and pertain to the same factual circumstances.  Thus, it is reasonable to infer that the efforts expended by plaintiff's counsel between June 15, 2006, and October 4, 2006, were not unnecessary and in fact directly furthered the prosecution of the instant lawsuit.  (See Aug. 10, 2009 Browne Decl. ¶ 7 (providing that the second complaint was filed after only 1.1 hours of additional attorney time).)  Accordingly, plaintiff is not precluded from recovering reasonable attorneys' fees incurred between June 15, 2006, and October 4, 2006.

> 2.   Whether Certain Fees Are Unreasonable or Were Unnecessarily Incurred

The purpose of California Civil Code section 1717 is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions."  PLCM Group v.

1   <u>Drexler</u>, 22 Cal. 4th 1084, 1094-95 (2000) (quoting <u>Santisas v.</u>
2   <u>Goodin</u>, 17 Cal. 4th 599, 616 (1998)).  To achieve this goal, the
3   trial court is given "broad authority to determine the amount of
4   a reasonable fee." <u>Id.</u> at 1095 (citing <u>Int'l Indus., Inc. v.</u>
5   <u>Olen</u>, 21 Cal. 3d 218, 224 (1978)); <u>see</u> <u>Montgomery v. Bio-Med</u>
6   <u>Specialties, Inc.</u>, 183 Cal. App. 3d 1292, 1297 (1986) (providing
7   that the trial court has "wide latitude in determining the amount
8   of an award of attorneys['] fees").  In exercising this
9   authority, the court is primarily guided by principles of equity.
10  <u>See</u> <u>Beverly Hills Props. v. Marcolino</u>, 221 Cal. App. 3d Supp. 7,
11  12 (1990) ("[T]he award of attorney[s'] fees under section 1717,
12  as its purposes indicate, is governed by equitable principles."
13  (citing <u>Int'l Indus.</u>, 21 Cal. 3d at 224)).
14       "[T]he fee setting inquiry in California ordinarily
15  begins with the 'lodestar,' i.e., the number of hours reasonably
16  expended multiplied by the reasonable hourly rate." <u>PLCM</u>, 22
17  Cal. 4th at 1095.  "The reasonable hourly rate is that prevailing
18  in the community for similar work." <u>Id.</u> (citing <u>Margolin v.</u>
19  <u>Reg'l Planning Comm'n</u>, 134 Cal. App. 3d 999, 1004 (1982)).  After
20  calculating the lodestar, the trial court "shall consider whether
21  the total award so calculated under all of the circumstances of
22  the case is more than a reasonable amount and, if so, shall
23  reduce the section 1717 award so that it is a reasonable figure."
24  <u>Id.</u> at 1095-96 (quoting <u>Sternwest Corp. v. Ash</u>, 183 Cal. App. 3d
25  74, 77 (1986)).
26       Here, plaintiff proposes a lodestar figure of
27  $328,970.65.  This amount accounts for the hours principally
28  expended by one partner (Steven Browne) and one associate

(Jonathan Brophy) of the law firm Waller, Lansden, Dortch & Davis LLP ("Waller Lansden"), although certain fees generated by other partners, associates, and paralegals are also included.  (See July 8, 2009 Browne Decl. ¶¶ 13-19.)  This figure also reflects a ten-percent discount from Waller Lansden's standard billing rate due to the longstanding relationship between the firm and plaintiff.  (See id. ¶ 7.)

In response to plaintiff's proposed lodestar figure, defendant raises several objections relating to the reasonableness of certain fees.  Specifically, while conceding that the individual billing rates for the Waller Lansden attorneys on this matter were reasonable (see Opp'n Mot. Atty. Fees 5:28-6:5), defendant contends that these rates were effectively increased due to overstaffing on certain tasks (id. at 6:5-11).  Defendant also argues that certain fees were incurred for unnecessary tasks or for non-legal work.  (See id. at 8:5-14:25.)

As to the overstaffing argument, defendant directs the court to several entries in plaintiff's billing statements. Defendant specifically notes that, between June 15, 2006, and July 24, 2006, partners Browne and Weaver and associate Scott expended approximately 22.6 hours drafting the complaint filed in the original lawsuit.  (See July 8, 2009 Browne Decl. Ex. 1 ("Fee Ex. 1").)  In addition, on November 1 and 2, 2006, partners Browne and Weaver and associate Perry collectively billed $679.50 to review a letter from defendant's general counsel, Mary Ellen Gormley (see id.), and on January 22, 2007, they collectively billed $950 for a conference call with Sunstone's president,

Dewey Greene (<u>id.</u> Ex. 2 ("Fee Ex. 2")).  On or about January 8, 2007, partners Browne and Weaver billed $486 for a conference call with Sunstone's general counsel, Colbey Reagan.  (<u>Id.</u>)  They also billed $414, $366, and $261 for reviewing defendant's motion to dismiss, defendant's reply, and the denial of defendant's motion to dismiss, respectively, during March and April 2007. (<u>See</u> <u>id.</u>)  Browne and Weaver also each spent thirty minutes reviewing a letter to Gormley on November 15, 2006 (Fee Ex. 1), and, on February 13, 2007, they spent a total of two hours drafting discovery requests (Fee Ex. 2).

The court first observes that, due to plaintiff's occasional use of "block-billing,"[1] it is not entirely accurate to state that--for example--Browne and Weaver "billed $486[] for a 10 minute conference call" on or about January 8, 2007.  (Opp'n Mot. Atty. Fees 7:20.)  On that date, Browne's billing entry reflects not only a "[c]onference call with [Reagan] and [Weaver] re[garding a] motion to dismiss and case strategy," but also "prepar[ing] [an] opposition to [the] motion to dismiss."  (Fee Ex. 1.)  When reviewing such instances of block-billing, it is incumbent upon the court to "compare the hours expended against the tasks and assess the reasonableness of those tasks." <u>Fitzgerald v. City of Los Angeles</u>, No. 03-1876, 2009 WL 960825, at *8 (C.D. Cal. Apr. 7, 2009).  After examining the billing entries identified by defendant and having considered the

---

[1]    "'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting <u>Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.</u>, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

parties' contentions at oral argument, the court finds that the total time expended for the tasks reported by these attorneys was reasonable.

Further, while "[c]oncerns about overstaffing are a relevant consideration," determining whether there has been unnecessary duplication often requires a difficult exercise of "judgment and discretion, considering the circumstances of the individual case." Id. at *9 (citing Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004)).  Other than simply directing the court to particular billing entries, defendant provides no persuasive reason why having two or three attorneys review and respond to Gormley's letter, conference with Greene and Reagan, draft the complaint, review a motion to dismiss, and draft discovery requests was unreasonable. See, e.g., Moreno v. City of Sacramento, 534 F.3d 1106, 1113 (9th Cir. 2008) ("Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive . . . ."); Jefferson v. Chase Home Fin., No. 06-6510, 2009 WL 2051424, at *4 (N.D. Cal. July 10, 2009) ("Chase has identified few substantive areas of duplicative effort, and does not make a persuasive case that the case was overstaffed. . . . [B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable."); see also Fitzgerald, 2009 WL 960825, at *8 ("The Court does not find the presence of lawyers at court meetings to be excessive or unnecessarily duplicative in this case . . . Plaintiffs typically only seek fees for two or three lawyers at those meetings."). Accordingly, the court will not deduct these fees from

1  plaintiff's lodestar figure.

2         Regarding tasks identified by defendant as unnecessary,
3  defendant contends that 15.8 hours expended by Browne during
4  April 2007 to oppose defendant's motion to dismiss were
5  unreasonable because, before April 2007, Browne had already
6  expended roughly three hours reviewing the motion, while Perry
7  had spent approximately 36.4 hours researching and drafting the
8  opposition.  (See Opp'n Mot. Atty. Fees 9:25-10:23; Fee Ex. 2.)

9         After reviewing plaintiff's opposition to the relevant
10  motion to dismiss,[2] the court concludes that the hours expended
11  by plaintiff's counsel were not unreasonable.  Defendant's motion
12  to dismiss included a memorandum of points and authorities,
13  declarations, and a three-part exhibit totaling over eighty pages
14  (see Docket No. 15); in turn, plaintiff's opposition included a
15  seventeen-page memorandum of points and authorities with
16  citations to over thirty-one state and federal cases and statutes
17  (see id. No. 16), as well as declarations which totaled twenty-
18  nine additional pages (see id. Nos. 17-18).  Thus, for each hour
19  of attorney time, plaintiff's counsel produced roughly two-thirds
20  of a page of their opposition; in other cases from this district
21  involving far simpler issues, "a reasonable rate for drafting
22  motions" has been found to be "approximately one page an hour,"
23  which did not include time for reviewing the opposing party's
24  motion, research, and discussing strategy with clients.  Thao v.

25
26         [2]    Technically, the work performed before April 2007 was
   in reference to a motion to dismiss that was subsequently mooted
   by the filing of plaintiff's First Amended Complaint.  (See
27  Docket Nos.  8, 12, 13-14.)  The work performed by Browne in
   April 2007 was to oppose a practically identical motion to
28  dismiss filed on March 6, 2007.  (See id. No. 15.)

1    <u>Comm'r of Soc. Sec.</u>, No. 06-2206, 2009 WL 737019, at *2 (E.D.

2    Cal. Mar. 19, 2009) (Kellison, Mag. J.).  The reasonableness of

3    plaintiff's counsel's fees is further supported by the denial of

4    defendant's motion to dismiss in its entirety.  (<u>See</u> Docket No.

5    21.)  Accordingly, for the foregoing reasons, the court will not

6    deduct these fees from plaintiff's lodestar figure.

7            Defendant further contends that $297 billed by Browne

8    on November 21, 2006, should be disallowed because the relevant

9    task--preparing the Complaint, civil cover sheet, and corporate

10   disclosures--should have been performed by "an associate attorney

11   or a paralegal."  (<u>See</u> Opp'n Mot. Atty. Fees 10:28-11:2.)

12   However, given the centrality of a complaint to the discovery

13   process and to the ultimate success of a plaintiff's lawsuit,

14   <u>see, e.g.</u>, <u>Charles O. Bradley Trust v. Zenith Capital LLC</u>, No.

15   04-2239, 2006 WL 798991, at *3 (N.D. Cal. Mar. 24, 2006), the

16   court cannot fault Browne for spending approximately one hour and

17   six minutes reviewing that document, as well as ensuring that his

18   client had properly disclosed their parent corporations and

19   subsidiaries.  As to the latter point, the court has recently

20   explained,

21           Without this information, the court risks retaining a
             case in which it unknowingly has a financial interest.
22           Not only would the undersigned judge face public
             criticism in such a circumstance, but the public's
23           confidence in an impartial judiciary would be eroded.
             Failure to assist the court in protecting these and other
24           interests . . . amounts to sanctionable conduct.

25   <u>Wallis v. Centennial Ins. Co. Inc.</u>, No. 08-2558, slip op. at

26   2:1-17 (E.D. Cal. July 7, 2009) (citing <u>Wong v. Regents of Univ.</u>

27   <u>of Cal.</u>, 410 F.3d 1052, 1060 (9th Cir. 2005); <u>F.J. Hanshaw</u>

28

1  Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136

2  (9th Cir. 2001); Fed. R. Civ. P. 16(f)).  Accordingly, the court

3  will not deduct this amount from the proposed lodestar.

4          Defendant further disputes fees incurred by Perry on

5  January 16, 2007, and January 24, 2007.  According to plaintiff's

6  counsel's billing statements, Perry billed five hours and

7  eighteen minutes for "[r]eview[ing] and analyz[ing] case plan

8  requirements," "research[ing] deadlines," and other case

9  management issues, as well as "research[ing the] eastern district

10 court['s] requirements for joint statements" and "[w]ork[ing] on

11 [a] joint statement for [a scheduling] hearing and in preparation

12 for [a] conference call with opposing counsel." (See Fee Ex. 2.

13 Citing In re Wepsic, 238 B.R. 845 (Bankr. S.D. Cal. 1999),

14 defendant contends that these tasks were "general education" and

15 are "thus not recoverable." (Opp'n Mot. Atty. Fees 1:24-26.)

16         Without "conceding the validity" of defendant's

17 argument, plaintiff states that it "does not oppose" defendant's

18 opposition to awarding these fees "due to the minimal amounts

19 involved." (Reply 8:4-5.)  The court finds that the time

20 expended to become familiar with the Eastern District Local Rules

21 governing scheduling procedures are in the nature of "general

22 education" and should not have been billed to the client.  See

23 generally, e.g., Perdue v. City Univ. of N.Y., 13 F. Supp. 2d

24 326, 346 (E.D.N.Y. 1998) ("Although Perdue's attorneys are

25 entitled to reasonable compensation for time spent in researching

26 employment discrimination law, they should not be fully

27 compensated for their general education."). Accordingly, the

28 court will deduct $528 from plaintiff's proposed lodestar.

1          Defendant also takes issue with 18.2 hours billed by

2   Browne on November 29 and 30, 2007, to prepare for and travel to

3   a deposition of defendant's "person-most-knowledgeable" pursuant

4   to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

5   Apparently, this deposition did not occur; defendant contends

6   that "in advance of the deposition," Gormley "exchanged [e-mails]

7   with Mr. Browne . . . regarding a rescheduling of this deposition

8   due to the parties' desire to schedule a mediation prior to the

9   deposition.  Therefore, if Mr. Browne did in fact travel to San

10  Francisco, he did so knowing that a deposition would not occur .

11  . . ."  (Opp'n Mot. Atty. Fees 9:15-24; <u>see</u> July 13, 2009 Gormley

12  Decl. ¶ 2.)

13          In response, plaintiff's counsel flatly rejects

14  defendant's assertions.  In a declaration, Browne states:

15          Ms. Gormley never informed me or anyone else at my firm
            that she intended to reschedule or cancel the deposition
16          . . . . I do not recall receiving any e-mail from Ms.
            Gormley  indicating  a  desire  to  reschedule  that
17          deposition.   I  traveled  to  the  Bay  Area  for  the
            deposition, fully and reasonably expecting it to take
18          place as-noticed.

19  (Aug. 10, 2009 Browne Decl. ¶ 2.)

20          Having carefully considered the relevant declarations

21  as well as the parties' arguments at the hearing on this matter,

22  the court does not lightly question counsel's candor.

23  Nonetheless, assuming that this issue amounts to a matter of

24  miscommunication, defense counsel is plainly in the best position

25  to clarify the matter by providing the e-mail exchange referenced

26  in Gormley's July 13, 2009 declaration.  Defense counsel has not

27  done so, and plaintiff can hardly be expected to prove a

28  negative.  Accordingly, the court will not deduct the fees

13

1  relating to the November 30, 2007 deposition from the proposed

2  lodestar.

3        Defendant further requests that the court reduce the

4  fees incurred by Browne and Brophy by twenty percent--$39,239.16

5  and $18,888.12, respectively--due to their "unrestrained" and

6  "extensive" use of "block-billing." (Opp'n Mot. Atty. Fees 12:4-

7  14:25.)  In support of this across-the-board reduction, defendant

8  cites <u>Welch v. Metropolitan Life Insurance Co.</u>, No. 04-84, 2004

9  U.S. Dist. LEXIS 28576, at *9 (C.D. Cal. Sept. 20, 2004), which

10 in turn referenced a publication by the California State Bar,

11 stating, "The practice [of block-billing] . . . may increase time

12 by 10% to 30%."

13        The district-court authority cited by defendant was

14 reversed in <u>Welch v. Metropolitan Life Ins. Co.</u>, 480 F.3d 942

15 (9th Cir. 2007).  In that case, the Ninth Circuit found that "the

16 district court clearly erred in applying a 20 percent reduction

17 to all of Welch's requested hours." <u>Id.</u> at 948.  Indeed,

18 contrary to defendant's proposal, extant caselaw provides that

19 "'the use of block billing does not justify an across-the-board

20 reduction or rejection of all hours,' but only those that are

21 block-billed.  <u>Fitzgerald v. City of Los Angeles</u>, No. 03-1876,

22 2009 WL 960825, at *8 (C.D. Cal. Apr. 7, 2009) (quoting <u>Mendez v.</u>

23 <u>County of San Bernardino</u>, 540 F.3d 1109, 1129 (9th Cir. 2008)).

24 Here, defendant specifically identifies only 23.5 hours of block-

25 billed time by Brophy and 14.4 hours of block-billed time by

26 Browne, which would amount to a reduction of $8,960.40 rather

27 than $58,127.28.  (<u>See</u> Aug. 10, 2009 Browne Decl. ¶ 9.)

28        Importantly, however, even where hours are block-

14

billed, a district court should refrain from reducing fees until it first determines whether "'sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks.'" Id. (quoting Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006)) (alteration in original).  To be sure, the court must be "practical and realistic" regarding how attorneys operate; if attorneys "have to document in great detail every quarter hour or half hour of how they spend their time . . . their fee[s] . . . will be higher, and the lawyers will simply waste precious time doing menial clerical tasks."  Smith, 466 F. Supp. 2d at 158.

        In this case, the vast majority of the block-billing identified by defendant involves the grouping of highly related tasks that rarely cover more than a few hours.  See Fitzgerald, 2009 WL 960825, at *8 (finding block-billing acceptable where "[m]any of [the] entries identified as block-billing are actually different parts of the same task"); cf. Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (finding block-billed entries unreasonable because they "include[d] time spent on bankruptcy matters, which ha[d] nothing to do with th[e] appeal" and "prevent[ed] . . . verifying that [appellant] deducted the proper amount of time").  Furthermore, in most of counsel's entries, the court is well-equipped to "compare the hours expended against the tasks and assess the reasonableness of

those tasks."[3]  <u>Fitzgerald</u>, 2009 WL 960825, at *8.  Accordingly, having examined the instances of block-billing highlighted by defendant, the court does not find it necessary to reduce the proposed lodestar.

The last item of attorneys' fees contested by defendant concerns the fees incurred by one "R. Varner."  Defendant contends that these fees "should be excluded" because plaintiff "ha[s] not set forth any information regarding the identity of this person."  (Opp'n Mot. Atty. Fees 1:24-26.)  Plaintiff's reply, however, explains that "R. Varner" refers to "the maiden name of Ryan Marie Brooks," an associate identified in plaintiff's motion for attorneys' fees and whose qualifications are adequately detailed.  (Reply 7:27-8:2; <u>see</u> July 8, 2009 Browne Decl. ¶ 19.)  Accordingly, the court will not deduct this amount from the proposed lodestar.

Regarding plaintiff's untaxed costs, defendant argues that two travel-expense items billed on February 17, 2008, are duplicative.  (Opp'n Mot. Atty. Fees 11:19-23.)  These expenses are in the amounts of $850.34 and $1016.39 and concern travel

---

[3]  Indeed, defendant's objection appears to criticize plaintiff's counsel for being <u>too</u> detailed in their billing, such as the following entry by Brophy: "Research legal authority for materiality of breach; research legal authority for excuse of conditions; research legal authority for satisfaction of promisor (ACMC) and duties of good faith and fair dealing; begin legal analysis."  (Opp'n Mot. Atty. Fees 13:16-21 (quoting Fee Ex. 2).)  Apparently, defendant would prefer Brophy to simply enter "research legal authority" on his timesheets, but this would unfairly place him in a catch-22.  <u>See</u> <u>In re Sealed Case</u>, 890 F.2d 451, 455 (D.C. Cir. 1989) (per curiam) ("[W]e note numerous instances of . . . specification that do not adequately describe the legal work for which the client is being billed.  This makes it impossible for the court to verify the reasonableness of the billings . . . .").

from Los Angeles, California, to Oakland, California.  (<u>See</u> July

8, 2009 Browne Decl. Ex. 3 ("Fee Ex. 3"); <u>see also</u> Aug. 10, 2009

Browne Decl. Ex. 1.)  Defendant contends that these items are

"duplicative charges for the same travel," namely, the Rule

30(b)(6) deposition of defendant's "person-most-knowledgeable."

(Opp'n Mot. Atty. Fees 11:21.)

        In response to this argument, plaintiff's counsel

submits a sworn declaration, in which he provides:

> Ms. Gormley informed me via e-mail the week before the
> deposition that only two of her witnesses could be there
> on [January 25th]. . . . I offered to reschedule the
> entire deposition [to] a date when all three witnesses
> would be available.  In Ms. Gormely's response . . . ,
> she requested that two of the witnesses . . . proceed as
> scheduled on January 25, 2008, with the third to take
> place the following week. . . . The two travel expenses
> charged on February 17, 2008 ($840.34 and $1016.39) were
> for separate trips in consecutive weeks.

(Aug. 10, 2009 Browne Decl. ¶ 3.)  Plaintiff's counsel also

provides the relevant e-mail conversation as an exhibit to his

declaration.  (<u>See</u> <u>id.</u> Ex. 1.)  Having reviewed the declaration

and its exhibit, the court finds that the travel-expense items

billed on February 17, 2008, were not duplicative.

        B.   <u>Request to Recover Costs</u>

        Federal Rule of Civil Procedure 54(d)(1) instructs that

"costs--other than attorney's fees--should be allowed to the

prevailing party" unless a federal statute, Federal Rule of Civil

Procedure, or a court order provides otherwise.  "Rule 54(d)(1)

creates a presumption in favor of awarding costs to a prevailing

party, requiring the losing party to show why costs should not be

awarded."  <u>State of Idaho Potato Comm'n v. G & T Terminal</u>

<u>Packaging, Inc.</u>, 425 F.3d 708, 723 (9th Cir. 2005) (citing <u>Save</u>

17

1  <u>Our Valley v. Sound Transit</u>, 335 F.3d 932, 944-45 (9th Cir.

2  2003)).  "[A] district court need not give affirmative reasons

3  for awarding costs; instead, it need only find that the reasons

4  for denying costs are not sufficiently persuasive to overcome the

5  presumption in favor of an award.  The presumption itself

6  provides all the reason a court needs for awarding costs."  <u>Save</u>

7  <u>Our Valley</u>, 335 F.3d at 945.  The type of costs that may be

8  awarded, however, are limited to those enumerated in 28 U.S.C. §§

9  1920 and 1821.  <u>Alflex Corp. v. Underwriters Labs., Inc.</u>, 914

10  F.2d 175, 176 (9th Cir. 1990) (citing <u>Crawford Fitting Co. v. J.</u>

11  <u>T. Gibbons, Inc.</u>, 482 U.S. 437, 441-42 (1987)); <u>see</u> E.D. Cal.

12  Local Rule 54-292.

13          In response to plaintiff's request to recover costs of

14  $10,673.31, defendant objects to $3098.87 in expense items

15  relating to court reporter's fees, E.D. Cal. Local Rule 54-

16  292(f)(3) (citing 28 U.S.C. § 1920(2)); witness fees, <u>id.</u> 54-

17  292(f)(8) (citing 28 U.S.C. § 1821); and fees for exemplification

18  and copies, <u>id.</u> 54-292(f)(5) (citing 28 U.S.C. § 1920(4)).

19          1.   <u>Court Reporter's Fees</u>

20          Defendant objects to $245 charged by a court reporter

21  for the non-appearance of defendant's "person-most-knowledgeable"

22  at a Rule 30(b)(6) deposition scheduled for November 30, 2007.

23  (Objs. to Bill of Costs 1:23-25; <u>see</u> Bill of Costs Ex. D.)  This

24  charge relates to the apparent miscommunication discussed

25  previously in Subsection II.A.2; defendant's general counsel

26  contends that she "exchanged [e-mails] with Mr. Browne . . .

27  regarding a rescheduling of this deposition," but plaintiff's

28  counsel disputes this claim.  (Opp'n Mot. Atty. Fees 9:15-24; <u>see</u>

18

1  July 13, 2009 Gormley Decl. ¶ 2; Aug. 10, 2009 Browne Decl. ¶ 2.)

2  Because the court previously permitted plaintiff to recover

3  attorneys' fees for this deposition, the court will also permit

4  plaintiff to recover the corresponding court reporter's fee.

5  Again, counsel for defendant is in the best position to support

6  its proffered reason for the non-appearance, but it has

7  inexplicably failed to do so.

8       Defendant also objects to $187.50 charged by a court

9  reporter for 2.5 hours of "waiting time" at the deposition of

10  Bill Manns on January 31, 2008.  (Objs. to Bill of Costs 1:26-28;

11  see Bill of Costs Ex. D.)  Defendant's general counsel

12  specifically contends:

13          Plaintiff  had  served  a  general  "Persons  Most
           Knowledgeable" [notice] on a variety of categories.  ACMC
14          produced 3 individuals in response: Gloria Jenkins, Jodi
           Copeland[,] and Bill Manns.  Mr. Manns deposition was not
15          scheduled for a particular time.  The court reporter was
           scheduled for the day based upon the deposition notice.
16

17  (July 13, 2009 Gormley Decl. ¶ 3.)

18       As discussed previously, however, plaintiff's counsel

19  provides a declaration and a supporting exhibit indicating that

20  Manns was the only "person-most-knowledgeable" to be deposed on

21  January 31, 2008; the other two depositions occurred on January

22  25, 2008.  (See supra Subsection II.A.2; see also Aug. 10, 2009

23  Browne Decl. ¶ 3; id. Ex. 1.)  Although this does not necessarily

24  contradict Gormley's assertion that "Mr. Manns deposition was not

25  scheduled for a particular time," it does cut against her

26  apparent suggestion that the "waiting time" resulted from all

27  three deponents being scheduled for the same day.

28       Despite this disagreement, both Gormley and plaintiff's

19

counsel appear to agree that the court reporter's charge for 2.5 hours of waiting time was inaccurate; Browne recalls that "Mr. Manns failed to show up until approximately 1:45 p.m. for a 1:00 p.m. deposition" (Aug. 10, 2009 Browne Decl. ¶ 3), while Gormley's "recollection was that we may have waited for Mr. Manns for about half an hour" (July 13, 2009 Gormley Decl. ¶ 3). Accordingly, under these circumstances, the court finds that the proper resolution of this objection is to reduce the court reporter's "waiting time" charge from $187.50 to $37.50.

Defendant's final objection regarding court-reporter fees involves a $732.35 payment by plaintiff's counsel to obtain an expedited trial transcript on June 22, 2009. (Objs. to Bill of Costs 2:1-7; <u>see</u> Bill of Costs Ex. D.) Plaintiff's counsel asserts that "[t]hese transcripts were made reasonable and necessary due to the fact that counsel for [d]efendant misstated witness testimony on a key point during her closing argument." (Reply 3:11-22.) Plaintiff's counsel used these transcripts to prepare and submit a supplemental brief before the court rendered its decision on June 23, 2009. (<u>Id.</u>; <u>see</u> Docket No. 105.)

The statute governing taxable costs permits the taxation of "[f]ees for . . . transcripts <u>necessarily obtained for use in the case</u>." 28 U.S.C. § 1920(2) (emphasis added). "Whether a transcript or deposition is 'necessary' must be determined in light of the facts known at the time the expense was incurred . . . ." <u>Estate of Le Blanc v. City of Lindsay</u>, No. 04-5971, 2007 WL 2900515, at *2 (E.D. Cal. Sept. 28, 2007) (Beck, Mag. J.) (citing <u>Barber v. Ruth</u>, 7 F.3d 636, 645 (7th Cir. 1993))).

1    Although plaintiff's counsel's reason for ordering the

2    expedited transcripts was legitimate, the court nonetheless

3    concludes that these transcripts were not necessary under the

4    circumstances.  The court neither requested nor invited

5    supplemental briefing after hearing counsel's closing arguments;

6    however, if plaintiff's counsel believed that counsel for

7    defendant had "misstated witness testimony on a key point," they

8    could have so argued in a supplemental brief without obtaining

9    expedited trial transcripts.  If the court agreed or disagreed

10   with counsel based upon its own recollection of the testimony,

11   the additional expense of obtaining transcripts would be

12   obviated.  Alternatively, if the supplemental briefing prompted

13   the court to inquire further, the court could then obtain the

14   relevant transcripts itself while minimizing the necessary

15   expense.  Accordingly, the court will disallow $732.35 from

16   plaintiff's request to recover costs.

17        2.  <u>Witness Fees</u>

18        Defendant objects to the airfare incurred by plaintiff

19   to transport its witnesses to the trial.  Specifically, plaintiff

20   contends that the fares incurred for Leann Miller ($755.40),

21   Grant Biggerstaff ($770), and Colby Reagan ($770) were

22   "excessive" because "economy travel booked 2 weeks in advance"

23   would be approximately $476, $539, and $539, respectively.  (<u>See</u>

24   Objs. to Bill of Costs 2:10-13, 2:25-27, 3:3-6.)  To support its

25   argument, defendant references fare quotations from the website

26   Orbitz.com for a flight from Nashville to Sacramento on July 29,

27   2009.  (<u>See</u> <u>id.</u> Ex. B.)

28        For purposes of taxing costs for witness fees, Rule

54(d) and Eastern District Local Rule 54-292 apply the provisions
of 28 U.S.C. § 1821, which states in pertinent part, "A witness
who travels by common carrier shall be paid for the actual
expenses of travel on the basis of the means of transportation
reasonably utilized and the distance necessarily traveled . . . .
Such a witness shall utilize a common carrier at the most
economical rate reasonably available."  28 U.S.C. 1821(c)(1).

          Here, while it is true that the trial date in this case
had been scheduled approximately three months in advance (see
Docket No. 69), the occasional unpredictability of the court's
calendar and the need to accommodate witnesses' schedules advises
against purchasing costly airfare impetuously.  Indeed, in this
case, the trial was transferred from Judge Frank C. Damrell to
the undersigned on June 1, 2009, due to unforeseen developments
in a criminal trial.  (See id. No. 70; Objs. to Bill of Costs Ex.
A.)  It is well-known, moreover, that the prevailing price of
airline tickets varies with the season, the time of week, the
time of day, the number and extent of layovers, and the whims of
the airlines; it would be inappropriate to speculate that
defendant's proffered fares could have been reasonably obtained
by plaintiff's witnesses.  See, e.g., MEMC Elec. Materials v.
Mitsubishi Materials, No. 01-4925, 2004 WL 5361246, at *8 (N.D.
Cal. Oct. 22, 2004) ("Although Expedia.com lists somewhat lower
economy airfares, there is no evidence in the record that these
fares were in effect or 'reasonably available' at the time the
witnesses came to Detroit, and Defendants have presented evidence
that these were their 'actual' expenses." (citing 28 U.S.C. §
1821(c)(1))).  Accordingly, having reviewed the travel documents

1  submitted by plaintiff, as well as plaintiff's counsel's

2  supporting declaration, the court finds that these actual travel

3  expenses are not unreasonable and should be allowed.

4  Defendant further objects to costs for "2 of the 3

5  hotel nights" incurred for Miller's testimony because "Ms. Miller

6  testified on a single day, June 18, 2009." (Id. at 2:10-13.)

7  Considering that Miller traveled from Iowa to California to

8  testify on June 18, 2009, it was not unreasonable for Miller to

9  have obtained lodging in Sacramento for June 17, 2008, and June

10  18, 2008.  In this respect, the court agrees with plaintiff's

11  counsel that Miller should not be "required to take [a] red-eye

12  flight[] back East the night [her] testimony ended." (Reply

13  4:10-13.)  Nonetheless, plaintiff has offered no justification

14  for Miller's hotel stay on the night of June 16, 2008, and the

15  court cannot discern the necessity of this expenditure.

16  Accordingly, the court will disallow $136.05 for Miller's hotel

17  stay on that date.  (See Bill of Costs Ex. E.)

18  Defendant also objects to various meal and

19  transportation expenses incurred by plaintiff's three witnesses

20  as "not allowable costs under 28 U.S.C. § 1821." These expenses,

21  however, are expressly permitted by 28 U.S.C. § 1821, and they do

22  not appear unreasonable.  See 28 U.S.C. § 1821(c)(3) ("[T]axicab

23  fares between places of lodging and carrier terminals, and

24  parking fees . . . shall be paid in full to a witness incurring

25  such expenses."); id. § 1821(d)(1) ("A subsistence allowance

26  shall be paid to a witness when an overnight stay is required . .

27  . .").  Nonetheless, having determined that Miller's presence in

28  Sacramento was unnecessary on June 16, 2008, the court will

23

1  disallow $18.79 for her meal expenses on that day.  (See Bill of
2  Costs Ex. E.)

3          3.  Fees for Exemplification and Copies

4          Defendant's final objection pertains to plaintiff's
5  request to recover $2255.55 in fees for exemplification and
6  copies of papers.  Defendant contends that the court should
7  disallow $596.60 of this amount, asserting that plaintiff has not
8  "me[t] its burden of demonstrating that these charges were
9  necessarily obtained for use in the case."  (Objs. to Bill of
10 Costs 3:10-14 (internal quotation marks omitted).)  Defendant,
11 however, does not indicate which of plaintiff's charges are
12 objectionable and provides no explanation as to how it arrived at
13 this proposed figure.  The fees for exemplification and copies in
14 this case are attested to as correctly stated and necessarily
15 incurred by plaintiff's counsel and are thoroughly supported by
16 documentation.  (July 2, 2009 Brophy Decl. ¶¶ 1, 8; id. Exs. A,
17 F.)  Accordingly, the court will allow these costs.

18          IT IS THEREFORE ORDERED that:

19          (1) plaintiff's motion for attorneys' fees and expenses
20 be, and the same hereby is, GRANTED in the amounts of $328,442.70
21 in attorneys' fees and $15,922.46 in untaxed costs; and

22          (2) costs of **$9636.12** are allowed.

23 DATED:  August 19, 2009

25  _____
    WILLIAM B. SHUBB
26  UNITED STATES DISTRICT JUDGE